THE CRANE COMPANY

*v.*

WILLIAM HOGAN.

*Opinion filed June 19, 1907—Rehearing denied October 8, 1907.*

1. APPEALS AND ERRORS—*it is error to arbitrarily refuse to receive and examine instructions.* It is error for the trial court to arbitrarily refuse to receive and examine instructions offered by a party, even though the court subsequently agrees to and does receive and examine part of them.

2. SAME—*it must affirmatively appear that error was harmless or reversal must follow.* A judgment will not be reversed unless error is affirmatively made to appear, but whenever error is shown to exist it will compel a reversal unless the record affirmatively shows the error was not prejudicial.

3. SAME—*a cross-error should be assigned instead of renewing the motion denied by Appellate Court.* Where the Appellate Court denies appellee's motion to strike certain instructions from the bill of exceptions but affirms the judgment, the appellee, if he desires to insist upon his position, should assign cross-error upon the action of the Appellate Court in denying the motion and not renew the motion in the Supreme Court, since the latter court, in passing upon the Appellate Court's action, must consider the same record.

4. SAME—*when allowance of appellee's motion would require reversal.* Allowance of a motion by appellee to strike from the bill of exceptions certain instructions which the trial court had arbitrarily refused to receive and examine would require a reversal of the judgment, since, in the absence of such instructions from the record, it could not affirmatively be made to appear that the arbitrary refusal thereof was harmless.

5. PLEADING—*the plaintiff must recover, if at all, upon the case stated in his declaration.* If the plaintiff sets out in his declaration the negligent acts of the defendant which entitle him to recover he must prove such acts, and he cannot recover because of negligent acts not averred in the declaration, even though such acts caused the injury.

6. FELLOW-SERVANTS—*when employees are fellow-servants.* Employees of the same master, including the engineer and switchman and the laborers, working together in the same switch yard for the common purpose of bringing in and taking out, loading, unloading, weighing and switching cars, whose duties are such as to bring

them into habitual association enabling them to exercise a mutual influence upon each other promotive of proper care and caution, are fellow-servants. (*Hartley* v. *Chicago and Alton Railroad Co.* 197 Ill. 440, distinguished.)

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.

RUSSELL M. WING, FRED M. WING, and FRED W. BENTLEY, for appellant.

COBURN & CASE, and MCGOORTY, POLLOCK & LOEB, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee brought this suit in the superior court of Cook county, against appellant, to recover damages for the loss of a little finger while in the employ of appellant, and upon a trial obtained a verdict for $5000. On the hearing of a motion for a new trial the court announced that the verdict was excessive and that a new trial would be granted unless appellee remitted $1500 from the verdict. Appellee thereupon remitted the $1500 required, and the court being of opinion that appellee's damages amounted to $3500, the motion for a new trial was denied and judgment was entered for said amount of $3500 and costs. The Appellate Court for the First District affirmed the judgment.

Appellee has made a motion to strike from the transcript of the record certified to this court certain instructions contained in the bill of exceptions, which recites the following facts: At the proper time appellant presented to the judge forty instructions as to the law claimed to be applicable to the case and asked him to give the same to the jury, but

he refused to receive or examine the same, saying that he would receive and pass upon twenty instructions, and no more. Appellant excepted to the refusal of the judge to examine or pass upon the instructions. After the opening argument to the jury was completed the appellant handed to the judge twenty instructions, which he passed upon, and subsequently, by his permission, two others were added. The instructions which the judge refused to receive were not filed with the clerk or marked for identification at the time, but subsequently, on the settlement of the bill of exceptions, appellant presented to the judge instructions, with affidavits that they were the same ones which he refused to receive or examine. The bill of exceptions recites that the judge found, solely upon the evidence contained in the affidavits, that the instructions are the same tendered to him during the progress of the trial and prior to the arguments of counsel and which he refused to receive. The ground of the motion to strike these instructions from the record is, that the judge did not certify from his personal or judicial knowledge that the instructions were the same which were presented to him and which he refused to examine.

It was error to arbitrarily refuse to examine the instructions and decide whether they contained propositions of law involved in the case proper to be given to the jury. (*Chicago City Railway Co.* v. *Sandusky,* 198 Ill. 400; *Chicago City Railway Co.* v. *O'Donnell,* 208 id. 267; *Chicago Union Traction Co.* v. *Olsen,* 211 id. 255.) If the motion of appellee should be granted it would inevitably lead to a reversal of the judgment, since it would then appear that error was committed, and it could not appear that the error was harmless. A judgment will not be reversed unless error is affirmatively made to appear, but whenever error is shown to exist it will compel a reversal unless the record affirmatively shows that the error was not prejudicial. The court said in the case of *Kirby* v. *People,* 123 Ill. 436, that the rule is not that the court must see that the error worked

injury to the party complaining, but that the court will not
affirm where error has intervened unless it shall appear from
the whole record that such error could not reasonably have
affected the result.   Inasmuch, however, as appellant has
not consented to the allowance of the motion, we do not
think that we ought to strike the instructions out of the
transcript or consider the motion on its merits.   The same
motion was made in the Appellate Court and denied, and if
that court erred, the proper practice would be for appel-
lant to assign a cross-error on the decision of the Appellate
Court.   In order to pass upon the correctness of the deci-
sion of the Appellate Court we must consider the case upon
the same record, and if the Appellate Court should err in
ruling on such a motion it might be necessary to send the
case back to that court to have it considered upon a different
record.   The motion is denied, as not being in accordance
with the proper practice.

At the conclusion of the evidence the defendant asked
the court to direct a verdict of not guilty, which the court
refused to do, and the refusal is assigned as error.   That
assignment raises the question whether there was evidence
fairly tending to prove the case made by the declaration.
It was alleged in the declaration that plaintiff was in the
employ of the defendant, and in the ordinary course of his
employment it became his duty to assist in the removal of
a certain iron plate of great weight from a certain car then
and there under the control of the defendant; that the de-
fendant knew that the plaintiff was at work in the car or
in the exercise of reasonable care would have known it; that
the defendant negligently and carelessly, and without warn-
ing of any kind to the plaintiff, ran a switch engine against
the car, causing the car to move suddenly and violently, by
means of which the plaintiff, who was in the exercise of due
care for his safety, was thrown with great force and violence
against the side of the car and divers other objects there,
by means whereof he was severely injured in and about the

body, head and limbs, both internally and externally, and received a great nervous shock, from which he will never recover; that muscles and ligaments of his body were torn and bruised and lacerated, and he became sick, sore, lame and disordered, and so remained for a long time, during which he suffered and will suffer great pain and inconvenience, both in body and mind, on account of said injuries, and has been and will be prevented from transacting his business and affairs, and was obliged and will be obliged to expend large sums of money in endeavoring to be cured of his injuries, sickness and disorders. The only injury which plaintiff suffered or complained of was the loss of a little finger, which was amputated, with the usual consequences and inconveniences resulting therefrom.

The evidence most favorable to the plaintiff tended to prove the following facts: The defendant had a plant in Chicago called the Judd street yard or plant, in which there were private switch tracks, track scales, and platforms for loading and unloading sand, iron and other material. The plaintiff had been in the employ of the defendant about a year, and had worked in the daytime until the last eleven days before the injury, during which he worked in the night. The defendant had a switch engine in the yard for moving cars, which was operated by an engineer without a fireman, and there was one switchman, named William Roach. Michael Hayes was the foreman, and the laborers were the plaintiff, James Malone, John Ryan and two Poles, named Araskiewicz and Dergiowicz. During the last eleven nights the plaintiff had worked unloading sand and pig iron from freight cars and doing other like work with the other employees of defendant in the yard. On the night of the accident, at about half-past eleven, the plaintiff and Malone, Ryan and the two Poles commenced loading a box-car with borings, which came down from a tank through a chute six feet long and two feet wide, into the car. There was an iron plate about three feet square and one-fourth inch thick laid

in the center of the car, under the chute, so that the men could shovel from the plate to the ends of the car. The plate had been frequently used for that purpose, and the men had been told to take the plate out when they were through with it. It took about two and one-half hours to load the car. It was never the custom to ring a bell or sound the whistle in moving the switch engine about the yard or moving cars. When the men were working in the car they always had a large tubular lantern hanging up in the center of the car. This light was furnished and was to be hung up in the car when any one was at work in it, and when a car was loaded it was the custom to remove the lantern, tools and plate from the car before it was moved on the track scales to be weighed. On this occasion after the car was loaded the chute was removed and was carried ten or fifteen yards south of the car and put in the scale room. The men came out of the car on the platform and Malone took out the lantern. The men were attending to the spout from the tank and a barrel was placed under it to catch the drippings. The men were fixing up the barrels and spouts and were away from the car. There was a drip-pan, which was used to catch oil and carry it into the barrel on the platform outside of the car. Plaintiff helped carry the chute away from the car and then noticed Ryan trying to hang up the drip-pan. Plaintiff took hold of one of the wires and helped hang the drip-pan up on a nail. The foreman, Hayes, was weighing cars, and about five minutes after the loading of the car had been finished and the men had left it, plaintiff thought about the iron plate being still in the car and went in there. Araskiewicz was trying to take the plate out, and it was so dark that plaintiff testified that he could not see Araskiewicz. There was evidence that the foreman, Hayes, called out, "All right, Bill," before the engine started, and when the switchman heard the call he threw the switch and started in to take the car out. Plaintiff was in the car and had hold of the plate with his hands over the

edges, and Araskiewicz had hold of the other side of the plate and had got outside of the car, when the switch engine struck the car. The plate struck against the frame of the car door and cut off plaintiff's finger.

There was no charge in the declaration of any negligent or improper order of the foreman, or any other charge than that the defendant knew, or in the exercise of reasonable care would have known, that the plaintiff was in the car, and negligently and carelessly, without warning, ran the switch engine against the car. That charge was not sustained by any evidence. There was no evidence tending to prove, or from which the jury could reasonably have found, that defendant's employees knew, or ought to have known, that the plaintiff was in the car. The loading of the car had been completed; the lantern which was required to be kept in the car when men were in it had been taken out; the men had come away from the car and had been seen on the platform. Although the foreman had given a general direction, at some time, to remove the plate when through with it, there is no evidence that he told plaintiff to go into the car at this time or knew that he was in there in the dark. If there was no reason to suppose that any one was in the car, the manner in which the engine was backed against it would not constitute a cause of action. The question whether the foreman gave any negligent order with respect to the movement of the switch engine, or to any action of the plaintiff which would create a cause of action, is in no way involved. Where the plaintiff sets out in his declaration the negligent acts of the defendant which entitle him to recover he must prove such acts, and he cannot recover because of negligent acts not averred in the declaration, even if such acts caused the injury. (*Chicago City Railway Co.* v. *Bruley,* 215 Ill. 464.) He must recover, if at all, upon the case stated in his declaration, and the evidence did not fairly tend to prove the material averments of plaintiff's declaration.

The evidence also established the relation of fellow-servants between the men who were handling the switch engine and the plaintiff. The duties of the plaintiff, and the other laborers with him, and the switchman and engineer, were such as to bring them into habitual association so that they might exercise a mutual influence upon each other promotive of proper care and caution, and they were therefore fellow-servants. (*Chicago and Eastern Illinois Railroad Co.* v. *Geary,* 110 Ill. 383; *Abend* v. *Terre Haute and Indianapolis Railroad Co.* 111 id. 202; *World's Columbian Exposition* v. *Lehigh,* 196 id. 612; *Chicago City Railway Co.* v. *Leach,* 208 id. 198.) They worked together in the same yard for a common purpose, and the bringing in and taking out of cars, loading, unloading, weighing and switching, brought them into habitual association in the performance of their duties. Araskiewicz, the Pole, who was in the car with plaintiff, testified that the foreman, Hayes, told the switchman, William Roach, the car would be ready in five minutes, and the car was struck in two minutes. His evidence tended to prove that the foreman was not at fault, and that the injury resulted from negligence of the switchman. So far as any act of the engineer or switchman contributed to the injury of plaintiff it was the act of a fellow-servant, for which there could be no recovery.

There is no similarity between this case and the case of *Hartley* v. *Chicago and Alton Railroad Co.* 197 Ill. 440, where the usual duties of the two switching crews did not necessarily bring them into habitual association, but one crew operated at the east end of the yard and the other at the other end of the yard, about half a mile distant, and for an entirely different purpose. The same is true of other cases relied upon to sustain the claim that the plaintiff was not a fellow-servant with the engineer and switchman.

In our opinion the defendant was entitled to have the instruction directing a verdict given as requested, and in that view of the case we do not deem it necessary to con-

sider whether the error of the court in refusing to receive and pass upon the instructions was of such a nature that the judgment ought not to be reversed on account of it.

The judgments of the Appellate Court and superior court are reversed and the cause is remanded to the superior court.

*Reversed and remanded.*