John D. Casey, Administrator, Defendant in Error, v. The Prudential Insurance Company of America, Plaintiff in Error.

## Gen. No. 15,534.

1. APPEALS AND ERRORS—*when reversal ordered; when not.* If the appeal is from the Superior Court and error appears reversal will be awarded unless absence of prejudice also appears. If the appeal is from the Municipal Court reversal will not be awarded unless the Appellate Court is satisfied that the error was prejudicial.

2. INSTRUCTIONS—*when as to effect of representations contained in application for insurance erroneous.* In an action by a beneficiary under a life insurance policy where the defense is fraudulent representations contained in the application, it is error to instruct the jury that notwithstanding the admitted signature of the insured to the application (the answers to which were written by the agent of the company) the insured could not be regarded as giving the answers or making the representations contained in the application unless such insured had read the same or knew what they were.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed July 10, 1911.

**Statement by the Court.** The plaintiff recovered against the defendant in the Municipal Court of Chicago on March

6, 1909, a judgment for $268.33 and costs. The judgment was upon a policy of life insurance issued in favor of the plaintiff's intestate by the defendant for the sum of $500, with the provision that if the insured should die within six months from its date one-half only of that amount should be paid. The premium was a weekly one of twenty-six cents. The copy of the policy that appears in the record is not dated, but it is conceded that it was applied for and issued in May, 1907. The insured died August 31, 1907. The judgment therefore represents the half benefit provided for in case of death within six months, with interest.

The plaintiff's intestate, Mary Jane Giblin, died of consumption. The defense was based on the provision in the policy that it should be void "if any of the representations upon which this policy is granted be not true."

It was contended that "the representations" thus alluded to were to be found in an application for the policy signed by the insured on May 2, 1907, which was introduced in evidence.

This application contained, among others, the following questions and answers:

| "14. A. What is the present condition of health? | B. When last sick? Month.     Year. | C. Of what Disease? | D. Does any physical or mental defect or infirmity exist? |
|---|---|---|---|
| Good. | Never Serious. | None. | No. |
| 15.     x  x  x  x | 16. Has either parent or any brother or sister died of consumption? No. | 17.    x  x  x | |
| 18. Has life proposed ever suffered from Consumption, Asthma, Spitting of Blood, Habitual Cough, Apoplexy, Paralysis, Heart Disease, Insanity, Fits or Convulsions, Rheumatism, Disease of the Liver or Kidneys, Cancer, Ulcers or Accident of any kind? | | State what disease.

None." | |

Beneath the questions and answers was the following text and signatures:

"I hereby apply for insurance for the amount herein named and I declare and warrant that the answers to the above questions are complete and true and were written op-

posite the respective questions by me or strictly in accordance with my directions. I agree that said answers with this declaration shall form the basis of a contract of insurance between me and the Prudential Insurance Company of America and that the policy which may be granted by the Company in pursuance of this application shall be accepted subject to the conditions and agreements contained in such policy.    *    *    *    *    *    *    *    *    *

Mary Jane Giblin.

Witness P. Gallagher.    Dated this 2d day of May, 1907."

The defendant claimed at the trial that the answers of the insured to the questions above set forth as they appeared in the application were untrue; that under the provisions of the application and policy, taken together, they were warranties, and that their untruthfulness avoided the policy whether or not they were material; that even if they were not warranties, they were, as a matter of law, material representations, the falsity of which rendered the policy void.

The questions of fact were submitted to a jury under written instructions from the court as to the law. The first instructions given at the request of the plaintiff set forth that the burden was on the defendant to show that the insured was not at the time of the application in sound health. The second so given was in full as follows:

"2. If the jury believe from the evidence in this case that an agent of the defendant insurance company filled out the application for the policy of insurance sued on in this case, and that the insured Mary Jane Giblin signed said application without reading it, and that the answers are false, you are instructed that the policy is not thereby made void unless the insured knew the answers of the agent were incorrect and the insured was a party to the fraud."

The third instruction tendered by the plaintiff and given by the court was this:

"3. The jury are instructed that the answers in the ap-

plication for insurance in this case are to be treated as representations and not warranties, and that the burden of proof is on the defendant to prove that such representations are the representations of the insured, that they relate to a material matter and are not substantially true."

The fourth instruction given at the request of the plaintiff declared that a representation as to a condition of health "goes only to the extent of an honest and true statement of applicant's belief."

In addition to these four instructions tendered by the plaintiff, the trial judge gave the jury, on behalf of the defendant, six instructions as tendered by the defendant, and four others after he had modified the form in which they were originally offered by it, as hereinafter stated. The last of the first six mentioned was merely one of general warning against sympathy and prejudice. Of the remaining five one was in these words:

1. "If the jury believe from the evidence that the insured Mary Jane Giblin made the answer in the application for the policy sued on, that she had never been seriously sick, and if the jury further believe from the evidence that she was seriously sick before the making of the said application, the jury will find for the defendant."

In each of the other four a similar hypothesis was contained as to the jury's belief in the making of an answer therein noted, and in its falsity. Each one referred to a different answer however. The first, as above set forth, referred to the answer "Never serious," to the Question 14 B.; the second to the answer "Good" to the question 14 A.; the third to the answer "None" to question 18, as applied to having suffered from "fits and convulsions;" the fourth to the same answer as applied to having suffered from "spitting of blood;" and the fifth to that answer as applied to having ever "suffered from any accident of any kind."

The four instructions which were modified before they were given were offered in substantially the same form as

those above set forth. The seventh related to the answer "None" to Question 14 C.; the eighth to the answer "No" to Question 14 D.; the ninth to the answer "None" to Question 18 as applied to having suffered from "consumption;" and the tenth to the answer "No" to Question 16.

As to the answers to these questions respectively concerning what disease the insured had suffered from, the existence of a physical ailment or defect, the suffering from consumption or the death of a parent or brother or sister from consumption, the trial judge by his modification of the instructions offered ruled that to require a verdict for the defendant the jury must believe from the evidence, not only that the insured made the answers and that they did not state the fact, but also that the insured knew what the fact was when she made the answers.

A verdict having been rendered for the plaintiff and a motion for a new trial made and overruled, this writ of error was sued out. The defendant, plaintiff in error here, asks for a reversal because, as it alleges, the court should have given a peremptory instruction for the defendant, because the court admitted improper evidence for the plaintiff, because the judgment is against the weight of the evidence, and because of error in giving the instructions asked by the plaintiff, and modifying some of those asked by the defendant.

HOYNE, O'CONNOR, HOYNE & IRWIN, for plaintiff in error; JOHN O'CONNOR and CARL J. APPELL, of counsel.

RICE & O'NEILL, for defendant in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

We think it well to note at the outset of this opinion—what we have heretofore frequently called attention to—that the rule we have to apply regarding reversal for error differs in cases coming to us from the Municipal Court of Chicago from that applicable to cases from other courts.

The following rule as to a case coming from the Superior

Court was laid down in the opinion of the Supreme Court
in Crane Co. v. Hogan, 228 Ill. 338:

"A judgment will not be reversed unless error is affirma-
tively made to appear, but whenever error is shown to exist
it will compel a reversal unless the record affirmatively shows
that the error was not prejudicial. The court said in Kirby
v. People, 123 Ill. 436, that the rule is not that the court
must see that the error worked injury to the party complain-
ing, but that the Court will not affirm where error has in-
tervened unless it shall appear from the whole record that
such error could not reasonably have affected the result."

This, however, cannot be the rule under the Municipal
Court act, which as to cases of the fourth and fifth classes
expressly provides that "No order or judgment sought to be
reviewed shall be reversed unless the Supreme Court or
Appellate Court, as the case may be, shall be *satisfied* from
said statement or stenographic report or reports, signed by
said Judge that such order or judgment is contrary to the
law and the evidence, or that such order or judgment re-
sulted from substantial errors of said Municipal Court direct-
ly affecting the matters at issue between the parties."

On account of this distinction we regard it as unnecessary
to pass on some of the questions elaborately argued by counsel
in the extended briefs filed in this cause. We have given
careful attention to them all, but a brief analysis of the con-
trolling questions in the case alone will be sufficient to show
our reasons for our decision.

We do not think it necessary to discuss some of the rulings
on evidence or some of the questions of insurance law elabo-
rately argued. Whether representations concerning the health
of the insured are not, as a matter of law, material to the
risk, so that it is erroneous to leave their materiality to the
jury, is one of them. And so too, in the view we take of
the case, is the question whether the answers complained of
were warranties or merely representations, although we have
no hesitation in expressing our opinion that the trial judge
was right in considering them as representations merely.

A consideration of some of the instructions given reveals,

in our opinion, the controlling factor in the jury's decision. One of the instructions, for example, as hereinbefore stated, told the jury that if they believed that Mary Jane Giblin made the answer in the application that she had never suffered from accident of any kind, and further believed that she had suffered from accident of any kind before the making of the application, they must find for the defendant.

This was equivalent to telling them that unless they found that Mary Jane Giblin did not make the answer in the application, they must find for the defendant, for that she had suffered from an accident was proven and admitted in the case. But substantially is the same thing true, so far as the proof is concerned at least, concerning the applicant's having "a serious illness," her suffering from "fits and convulsions," and "the spitting of blood." It inhered, therefore, in the verdict of the jury, in our opinion, that they found that the answers in question were not the answers of the applicant; in other words, that Mary Jane Giblin did not make them. That the question whether or not she did make them was intended to be left to the jury, is evident not only from the phrasing of the instructions on behalf of the defendant, but as well from the second and third instructions given on behalf of the plaintiff, and from the whole course of the trial. Therefore, unless we are "satisfied" that the judgment is contrary to the law and the evidence on *this* question, or "resulted" from errors which affected the decision of the jury on this question, we ought not to interfere with the verdict and judgment. The determination of the cause is much simplified for us by this narrowing of the issue. If any one of the answers complained of was not Mary Jane Giblin's, no one of them was. It is conceded that the signature at the foot of the application, witnessed by "P. Gallagher" is hers, but the contention of the plaintiff was and is that the answers being, as it is admitted, written by Gallagher, who was an agent of the Company, were written and presented to Mary Jane Giblin under such circumstances and in such a way as to prevent her signature to the application being properly

held to make them hers. They were, it is contended, those
of the company's agent, and it is bound by them.

The first question, then, for our decision is whether we are
satisfied that the finding of the jury, which, as we have said.
inhered in their verdict that the answers were not hers,
was clearly against the weight of the evidence under the
instructions which were given by the court; and the second,
whether we are satisfied that the law was so incorrctly stated
by the court on this point as to have resulted in that verdict.

The instructions of the court which related to this question
are the second and third tendered by the plaintiff, and have
been set forth in the statement prefixed to this opinion.

Under them the jury were practically left to say whether,
even if the answers were false, the defendant had proven by
a preponderance of evidence that they were the representa-
tions of the insured, and were told that they were not her
representations, although she signed the application, if the
agent of the company filled out the application including
them, and she signed it without reading it, and did not know
that they were incorrect.

The jury evidently found that the application was so made
out and so signed without the knowledge of the signer that
the answers were incorrect. We are not "satisfied" that such
a finding was clearly against the weight of the evidence.
The testimony was directly conflicting. The agent of the
company, Gallagher, testified not only that Mary Jane Giblin
signed the application (which is conceded), but that she did
it in his presence, and that previously he had asked her all
the questions in the application and had taken down the
answers that she gave.

If this testimony was all that bore on the subject there
would be no doubt in our mind that the verdict should be set
aside as against the evidence, for, as the court implied by
some of the instructions given on behalf of the defendant,
some of the answers were plainly material and plainly false,
nor could the applicant in any proper use of language in such
a case be said to have signed the application "without reading
it."

But the applicant's mother, Anna J. Giblin, testified to an entirely different state of facts. She swore that the agent Gallagher, who had had previous business with the family, called at her house, where her daughter resided with her, but that he had no conversation with the daughter nor even saw her, but after a conversation with the mother about the kind of a policy to be taken, sat down and filled in the answers in the application, asked only one question (which was as to the age of the applicant), gave the mother a pencil and the application, told her to take the application to her daughter, who was in the kitchen, and have her sign it at the bottom and it would "be all right." Mrs. Giblin says that she took the application and pencil and carried it to her daughter, who signed her name immediately and gave it back to her (Mrs. Giblin), and she carried it back to the agent, who went away with it. The next time Mrs. Giblin saw the agent her daughter was dead, and this question of the answers in the application had been raised. She says that being at the house of a friend, one Mrs. Killeen, in November, 1908, she met Gallagher, who came there and took the application of her friend for a policy, writing it up himself and asking her friend to sign her name. Thereupon Mrs. Giblin said, "That is the way you done in my house with my girl. When you filled out her application you asked no questions and made all this trouble for us," and Gallagher neither admitted nor denied it.

Mr. Gallagher, on the other hand, testifying as to the same occurrence, says Mrs. Giblin said, "You have not asked the same questions as you asked Mary Jane. How is that?" To which he replied, "I have asked all that is necessary."

Mrs. Killeen corroborated Mrs. Giblin as to this conversation and contradicted Gallagher, and added to her testimony that Gallagher "looked funny in his face" on account of it.

However this testimony might have impressed us had we been jurymen, we do not think that we should disturb a verdict because it was based on Mrs. Giblin's version of what took place. And if her version was correct, we think the jury were justified in finding that the agent of the company

filled out the application, and that the applicant signed it without reading it and without knowing what the answers were and, of course, therefore, without knowing that they were false. That they did so find we are "satisfied," and are equally "satisfied" that their verdict was the result of the application to the testimony which they had heard of the instructions given to them by the court on this one question.

We are therefore brought to the ultimate question for our decision: Was the court right in instructing the jury in effect that notwithstanding her admitted signature to the application, the insured could not be regarded as giving the answers or making the representations therein contained unless she had read the same or knew what they were?

We have carefully considered this question, and are unable to hold that it was. The implications of the instructions go too far.

It is undoubtedly true that under circumstances of fraudulent conduct on the part of the agent to secure the insurance and his commissions (such as writing down one answer when another was given, or securing a signature to a blank, and afterwards filling in the matter supposed to be signed by the applicant, or securing the mark of one who can not read, or through illiteracy can read but imperfectly, without full explanation of the contents of the paper to which the mark is put), the answers or representations to be found in the application will be treated entirely as to the utterances of the company, through its agent, and not those of the applicant at all. Such, for example, is the doctrine of cases like Insurance Company v. Wilkinson, 13 Wallace, 234, in the Supreme Court of the United States, Royal Neighbors of America v. Boman, 177 Ill. 27, in the Supreme Court of Illinois, and Maloney v. The North American Union, 143 Ill. App. 615, in this court. But in the Wilkinson case Mr. Justice Miller in his opinion says: "It is not denied that he" (the applicant) "signed the instrument, and that the representation is untrue. But the parol testimony makes it clear beyond question that this party did not intend to make that representation when he signed the paper and did not know

he was doing so, and in fact had refused to make any statement on that subject." In the Boman case the court found that the applicant made truthful answers, but that the agent of the company inserted untruthful ones, and the gist of the opinion is: "Where one makes true answers to the questions in an application for insurance, the validity of the insurance is not affected by the falsity of the answers inserted by the agent of the company."

In the Maloney case the signature was obtained to a blank on the urging of the agent of the company, and the statements filled in by him days afterwards.

These cases and others like them fall short of holding that the signing by a person of fair education and intelligence, without reading and without actual knowledge of its contents, of a blank containing answers prepared by the agent of the company, but without urging or fraudulent representations on his part, and out of his presence, can be treated as nugatory because of the ignorance thus voluntarily accepted.

We think it a dangerous doctrine to give the formal signature to a contract as slight importance as this holding would imply. But we think that the instructions taken together involve that holding, and are "satisfied" that the verdict and judgment resulted therefrom. Therefore the judgment is reversed and the cause remanded.

*Reversed and remanded.*